The last case on argument is Braunstein v. Sahara Plaza Braunstein v. Sahara Plaza, LLC The District Court erred in granting summary judgment in favor of the defendants dismissing the plaintiff's claims of gender discrimination, harassment, and retaliation. The court properly found that the plaintiff had established a prime aphasia case of unlawful gender discrimination and retaliation. The court found that the defendant had succeeded in shifting the burden to the plaintiff, back to the plaintiff, by alleging that it had a proper ground for dismissing, terminating the plaintiff's employment. The asserted ground was the subjective standard of that she was difficult to work with. And then the court, despite the finding of prime aphasia gender discrimination and retaliation, concluded that the plaintiff had failed to raise an issue of fact and had not presented any proof sufficient to defeat summary judgment on the issue of pretext. It's respectfully submitted that the plaintiff did succeed in meeting her burden, that the court's finding of prime aphasia discrimination and disparate treatment, evidencing discriminatory intent, that is evidence that can be used on the issue of pretext, and sufficiently established that the plaintiff's termination, or the reasons for her determination, should at least be permitted to be determined by a jury. Can you talk to me about a couple of things, like the same actor inference? Like, it was Mariano that hired and fired the plaintiff within the span of a short period of time. Presumably, the inference is that he wasn't going to be discriminatory toward her because he hired her, but then he was the same actor that fired her. Should we consider this inference at all? I don't believe that we should. Under the circumstances, we're two things. Mariano, number one- Well, there's case law that says we should consider it. Considering it, yes, but I don't think it should be applied. Okay. Or if the inference is applied, the issue, the plaintiff should be permitted to rebut it and should be able to have that issue determined by a jury. Despite that inference, Mariano himself demonstrated discriminatory bias. Perhaps more importantly, he based- The evidence of the bias is the inappropriate language he had in the conversation that she recorded. That's part of it, in addition to the fact that he had treated her differently. There was disparate treatment as well between her and her all-male coworkers in terms of how complaints were treated. Complaints against her, she was not given an opportunity to respond. The complaints were given credence, whereas when she was complained, no action was taken. Perhaps more importantly, it appears that Mariano based his determination to terminate the plaintiff based on a performance review, which was number one, inaccurate according to the plaintiff's testimony, but two, was created by someone who the court found to have exhibited discriminatory animus and disparate treatment, and another- I didn't see you allege cat's paws. I mean, is that your theory of liability? Say it again? The cat's paw theory? The idea that Mariano was manipulated by either Winterson or Duro? Not necessarily manipulated, but certainly influenced in reaching his conclusion. But you didn't allege that, right? Honestly, Your Honor, I'm not sure if it's alleged in the complaint, but it's certainly argued in the papers. And how does the evidence support that? What evidence is there to support that? Mariano explained that his determination to fire the plaintiff was based on the performance evaluation, and the lower court found that as well. Mariano expressed, testified that the determination to terminate the plaintiff's employment was premised on the input from his supervisors. And those supervisors, I'm sorry, her supervisors, those supervisors were Derui. It's not that he has to have just looked at that. In our decision in Nagel, it says you have to show that evidence that Mariano merely served as a conduit vehicle, a rubber stamp by which people like Winterson or Derui would have achieved their design. And I'm not sure you produced any evidence that that was the case, that it was based entirely on her allegedly poor performance review by Winterson. I believe that it was, Your Honor, because if you look at Mariano's own explanation for- The point is that he received numerous complaints about her, including from a female manager, four female cocktail servers, two female consultants. And he concluded that after several attempted interventions, the plaintiff was not addressing her own behavior and demonstrating a willingness to change it. He may have testified to that, but he also testified that he believed she was a good worker. He believed that she responded to criticism well, that she was- But this was his ultimate conclusion based on the numerous complaints he was receiving. Well, again, in terms of the complaints, he didn't hear the plaintiff out. He didn't give her an opportunity to address them. Our task here is not to decide whether or not they should have fired her, but whether they did so for an impermissible reason. And that's my concern, is how do you demonstrate that Mariano did so either for an impermissible reason or because he was basically manipulated by others? I think that, Your Honor, there's sufficient evidence to permit a jury to reach that conclusion. Number one, based on the fact that Mariano exhibited disparate treatment and discriminatory animus, that he testified that he based at least in part on the performance of- I don't think your arguments about disparate treatment are merited at all, because the persons you compare her to are not comparable, and the comparisons simply- they're not the same. But tell me more about the discriminatory animus. It seems to me that the evidence of discriminatory animus on the part of Mariano, at least, is extremely thin. So tell me what you think is the best case for the discriminatory animus on the part of Mariano. Well, Your Honor, I think it starts with something as simple as when she went to complain about the performance evaluation, he used that-I won't say the term here, but he used that derogatory term that had been used pervasively throughout her employment by Mariano as well as the other supervisors and coworkers that she- Don't say you're not going to use the discriminatory term. We're here to talk about the evidence. So tell me what the evidence- Okay, when she complained about her performance evaluation, his response was, what do you expect? You're a bitch. I believe that that-and again, the plaintiff testified that that word was used pervasively, not just by her supervisors and coworkers, but by Mariano himself. It was being used in the context of telling her that she was extremely difficult to work with and, you know, not cooperative in various ways. So I'm not sure how we would automatically assume that meant gender hostility. Indeed, in the Puccino versus Verizon Wireless case, we rejected a rule that would automatically use that-automatically infer from that word gender hostility. Your Honor, I'm not saying that that's the sole basis of the gender hostility. Judge LaValle asked you for what your best evidence was. So beyond the use of that word, what else is there to show Mariano's gender hostility? I believe the lower court even acknowledged that the plaintiff's opinions were rejected, whereas the opinions of the- How does that show gender hostility? I think that in combination with lending credence to the complaints made against her and not accepting her complaints against the other people. Listen, I think the evidence is clear that the plaintiff-assuming the plaintiff was difficult to work with, her coworkers were also difficult to work with as well. She was physically attacked. She was verbally abused. And she was generally not treated in the same way by people who were-I mean, Daruli, who had input into the performance evaluation, which was a factor in her firing, the court was clear that he exhibited discriminatory animus and used the bitch word repeatedly, made anti-Semitic remarks to the plaintiff, and was constantly arguing with her. It sounds to me like the court and the defendants- What were the anti-Semitic remarks? I don't believe that specific wording is set forth in the record. I know that it was at least on two occasions that anti-Semitic- And that's not the claim, right? Correct, that's not the claim. Okay. But I think it's evidence of the- It's evidence-using an anti-Semitic remark is evidence of gender discrimination? I think when you look at it in the totality of the circumstances, it is. Can we talk a little bit about the retaliation claim? When I first read your papers, I thought you were going to say that the retaliation came after she first complained about the Taylor visit, but that's not what I understand your argument. Your argument is where? Like, was it the-I'm having a hard time pinning down what you think was the action that precipitated the retaliation. Like, what was the complaint that precipitated the retaliation? I think there were several complaints, Your Honor. I think it started with the Taylor incident. It then continued with the- Okay, so the retaliation- Okay, but then what was the retaliatory action in response to the Taylor complaint? I saw a lot of complaints, and I saw a lot of allegations of adverse action. I did not see which one temporarily gave rise. Your Honor, I think as the district court found, I think it was retaliation every time the plaintiff complained. She faced a retaliatory reaction. First, it was the Taylor incident. Then it was the McSloy incident. What happened when she-what would you say is the retaliation that she experienced from the Taylor? She was considered to be a complainer. She was said that her complaints were not ladylike, that she was acting like a baby by making complaints. Yeah, but that's not an action, right? That's not an employment situation. Well, that culminated in the performance evaluation. I think that that's something else to consider here. I think the lower court looked only at the termination as being the only adverse employment action. But there was the taking away the lucrative Saturday night shift and giving it to Mennite. There was the negative performance evaluation, and then there was the-ultimately there was the firing. I think that each of those has to be looked at, both in terms of- I agree that those are interesting. Where I'm missing is where it was pled. Like where were-what did you give us enough to say that any one of those was in connection to some of the treatment? Which one do you think is your strongest evidence suggesting an X and then a Y? Like- Perhaps, I would probably say her complaints about Daruli, all right? Daruli had made misogynistic remarks to her. She complained about them. She was then labeled as a complainer and difficult to work with and such and such. And basically, Your Honor, it appears to me that the use of the word bitch attributing that to the plaintiff is basically the reason that she was fired. That's just a, you know, saying difficult to work with, with a woman who's the only woman working there, I think is just shorthand for their belief that she was a bitch because she complained. How is that in a circumstance where the complaints are coming from women? I'm sorry, Your Honor? How is that so when the complaints are coming from women? I mean, you're suggesting that viewing her as difficult to work with was code for gender discrimination. And I'm asking how that is, how that conclusion can be reached when the complaints came from many women. Your Honor, the- A female manager for a female cocktail service, two female consultants. Your Honor, the- As I said to you, we have rejected the notion that the use of the word in and of itself is a basis for finding gender discrimination. And here where the complaints come from women, I'm not sure you can ask us to infer that this is gender discrimination. Your Honor, the primary complaints about the plaintiff's behavior came from the men that she worked with. Your Honor is picking on a specific incident in which the plaintiff observed some of the cocktail waitresses interacting inappropriately with some of the customers. She went and, at the suggestion of her supervisor, went to Mariano to make that complaint. And that is where this issue was raised. Mariano happened to agree with her that she acted appropriately in bringing that to the attention, to his attention. But the bulk of the complaints about her and her supposed difficulty in working together with others- You're talking about her complaint about other women. I am referring to their complaints about her, her failure to produce the drinks that were ordered in a timely manner, her failure to help out with things. There are a whole bunch of these in the record. Well, again, Your Honor, I believe that that's relatively minor compared to the other issues. And I think that, again, this is an issue- I believe, Your Honor, this is an issue that should be determined by a jury, not by the court. Thank you. Thank you, Your Honor. Thank you. We'll see you in a little while. Good morning, Your Honors. May it please the Court. The fundamental issue before this Court is whether there are genuine issues of material fact, not issues of fact. Genuine issues of material fact warranting a trial on Ms. Braunstein's hostile work environment, gender discrimination, or retaliation claims. The answer is no, not just because of the lengthy reasons given by Judge Broderick in his opinion, but because of all of the following undisputed facts. The appellant worked at the plaza for only 138 days. Her position was covered by a collective bargaining agreement. As a union-represented employee, she was subject to a probationary period of 150 days. Her job description, her written job description expressly stated that as a bartender, she had to have excellent communication skills, strong interpersonal abilities, and the ability to work cohesively with her fellow employees as a part of a team. After two months of employment, she received a written performance review from her direct manager, Mr. Winderson, stating that she had not demonstrated any of the following behaviors. Respect for others, professionalism, responsibility, good attendance and punctuality, the ability to be a team player, leadership. What would you say, Counselors, the argument that your colleague on the other side says about as soon as she complained about the tailor that set a tone that she was not going to tolerate an environment that may have thought it was okay to use the B word in a professional setting and the like. How would you respond to that and that everything fell from her saying, however you all did this in the past, I am not going to make do in an environment that is sexually charged and sexually harassing. You guys are going to have to do better. Your Honor, what I would say is there isn't a scintilla of evidence linking the tailor incident to the written performance appraisal. Nothing. There was an incident. It was looked into. It was addressed. And she continued her employment. If you search the record, she never raises that again. She never raises that in the context of her performance appraisal. She never raises it during the course of her complaints about any of the other employees or male or female. It doesn't come up. There's no nexus. And the judge didn't see a nexus. And that's the reason why that argument fails. It's an incident that occurred at the outset of her employment. If there was truly an intent to terminate her, based upon that incident, my suggestion, Your Honor. No, no. That's the easy form of the argument. I think the harder form of the argument is it's not that there was an intent to terminate her. It's that people decided she was difficult because she was saying this kind of charged environment is not acceptable anymore, not with me being here. And so they were looking for reasons to react poorly to her surfacing issues of discrimination. Understood, Your Honor. I think what I would say is this so-called linkage, and I'm not suggesting that you're making that linkage, but if there's any linkage there, this is purely surmise and conjecture. There's no testimony. There's no evidence that actually links the two. It's a supposition. And there is no evidence, and I think that the judge pointed this out when he reviewed the job description. The issue isn't whether she agreed with the characterizations of her behavior or her performance. The issue is whether the persons who spoke with her issued that appraisal. Did they really believe this, or was this a subterfuge and a pretext for gender hostility? And there isn't any evidence that would show that it was. But so what's the line, though, between gender hostility and I think you're a pain and difficult because you are not allowing me to engage in hostile conversation or interactions at work? Where is that line coming in? It's very difficult to draw that line, Your Honor. I think what you have to do is if, as a part of her position, she needs to demonstrate an ability to work collaboratively and cohesively with coworkers, and there is massive amounts of evidence that she could not, I would submit to you, Your Honor, that that doesn't then turn it into a focus on her because of female characteristics. It's talking about conduct. It's going to be a poor analogy, but one of the things that I'm thinking about is like in public accommodations law, nobody could say, oh, well, we had to hire or we had to let these kinds of customers in because they're going to offend our other racist customers, right? So like in this setting, one can imagine an environment that was used to interacting and discussing things in a certain way, being frustrated that someone was suggesting that there should be a new way of being professional with each other. And the way I hear your argument is that the best explanation you have is just that it simply wasn't play, right? There wasn't anything played, you know, connecting her complaints to the way people were responding to those complaints that intersected with gender. That isn't necessarily my argument. My argument is that if your manager, in the context of a performance appraisal, says to you that your manner of interaction is problematic because I'm receiving complaints by males and females alike, and your response to that is, well, I own that. That's just the way I am because I'm a New Yorker. It's worked for me for 20 years, and that's the way I'm going to present myself. It's basically a statement. I am not going to address my behavior. I'm going to simply say you'll have to deal with it. I thought her behavior was, the issues about her behavior were not arising in the context of the complaints she made about the tailor or things like that. It was about her failure to be a team player with respect to the, you know, providing the waitresses with support and other things like that, which would be totally divorced from trying to change the dynamics of the environment because they had a sexist overtone. Am I right that that's what the complaints that prompted her termination relate to? Okay, I'm not- Is that not right? I'm not entirely sure I understand the context of your question. What got her fired? What was the difficult behavior that got her fired? I would simply submit that when it was brought to her attention that her manner of presenting herself- In what context her manner of presenting herself- While on the job, while interacting with other bartenders, while interacting with female servers- or the aggressive attitude of one of her colleagues. Is that right? That's correct because I don't know that there is even one ounce of evidence in this record that indicates that it was because she was complaining about issues of concern to her that that was crossing the line. It was the way that she conducted herself in the restaurant, behind the bar, with her co-workers. That was the gist of her termination. And remember, we're talking about 138 days of employment here. So if an employee who has just started has indicated that that is just who I am. This is how I interact. It has always worked for me and that's the way it's going to do. B, I don't see how this indicates a willingness- I think, Your Honor, your point about the female complaints- It was not just that three female servers complained about her, but she did so- She complained to a manager and raised these complaints, which the servers characterized as derogatory, and did so so loudly on the job that they overheard the complaints and they were very upset by that. It was just inappropriate, unprofessional, and not really thoughtful if you're trying to work with the servers. Can I ask you about another matter? How does one reconcile a finding by the district court that the plaintiff has made out a prima facie case with the further finding that the plaintiff loses on summary judgment? How do we reconcile those? Because I think the standard for establishing a prima facie case is so light, is so easy, that you need something more, Your Honor. That's only true until the employer furnishes a reason for the action. Correct. Correct. Because I think, Your Honor, again, with all due respect, if she's using the exact same evidence twice, and one is an easy standard to meet, and you have to prove to the judge that there is a triable issue of fact on pretext, and nothing that she has presented shows anything that a jury could conclude that this was pretextual, there's nothing suspicious about the timing of her termination because it was at the end of a probationary period. In this case, the judge found that your client carried its burden at step two, right? Yes, because it's only a matter of articulation. We're no longer concerned with the prima facie case. We're concerned with whether she satisfies step three. You're correct, Your Honor. Okay. Your Honor, the other thing I would say is if the way to analyze these cases is whether the plaintiff satisfied a prima facie burden because de facto, if you use the exact same evidence, it by definition establishes pretext, then virtually every case would go to trial. Not necessarily. Sometimes the prima facie case may be very strong and may itself offer evidence of discrimination that makes the proffered reason suspect. Then it does have to go to trial. Fair enough, Your Honor. Okay. I don't think that the evidence is nearly that strong because I think on the prima facie case, she has to establish that her termination arose under circumstances giving rise to an inference of gender discrimination. There isn't any such evidence, not when it wasn't a single person, and I think that the single actor doctrine is very important here. What do you say about the use of the word bitch and the use of the word not ladylike? Well, let's talk about the word bitch. I think, Your Honor, and as Judge Broderick did, I think you need to look and examine at the context in which he used it. Fortunately for us, the plaintiff clandestinely tape recorded the conversation, and what was said during the conversation is not in dispute. He was trying to coach her. He was trying to change behaviors, and he didn't say, you are a bitch. What he said was, and he spelled it out, there might be days when you are a B-I-T-C-H. Now, do I condone the use of that language? No, I don't. But the Supreme Court has specifically stated that Title VII is not a civility in the workplace act. It's about actual discrimination. So I would say, Your Honor, the use of that word in and of itself, consistent with this court's decision in Pacino v. Verizon Communications, is that's just not enough. You've got to look at the context. You have to look at the context. That's not enough to get to trial. There isn't any such thing. And as far as the ladylike comments, I don't believe that that's something that was made by the decision maker here. I think it may have been a comment that was a random comment, a stray comment made by somebody who used poor judgment. But it doesn't evidence that her job loss or even her performance appraisal were tainted by anti-female bias. It just doesn't establish it would be my answer, Your Honor. I see that my time is up. If there are no other questions from the bench, I will sit down. Thank you. Thank you. And you have two minutes, Officer Mignogna. Thank you, Your Honor. Just a couple of points here. Addressing the last matter, the court's finding that the plaintiff had made out a prima facie case. I believe the prima facie evidence is strong. I leave it up to the court to assess that. But I do want to point out that the plaintiff's evidence on pretext is not just the same evidence that the court talked about in finding a prima facie case. But the evidence of Mariano's bias, his saying, not just using the word, some days you're going to be a bitch. He also said, when the plaintiff complained about her performance review, he also said, what do you expect? You're a bitch. The issue of, I think you also have to look at the issue when you're judging not just the prima facie evidence or the finding that the evidence was sufficient to establish a prima facie case. But also to look at the reason given by the defendants for the firing that she was difficult to work with. We're not, as I believe came out in the last part of the argument, there's no specific incident here where it was, she's fired because of this. All right, she was fired because she did this, or she was fired because she had a run in with the other waitresses. It was nothing like that. It just was, that's it, you're terminated. And when asked to give the reason, the reason was she's difficult to work with. Which goes back to your Honor's discussion of the complaining. My adversary tries to make it out as though there were, that the issue of her complaining wasn't what made, what they assessed was what made her difficult to work with. And again, I think that that goes back to the use of the word bitch. And the fact that this was the opinion that they had of her because she complained, because she wasn't going to let them run all over her. When she had to deal with the Taylor incident, when she had to deal with the McSloy incident, when she had to deal with arguments with Deruli, Rosa, physically and verbally abusing her. The environment here, I think, was clearly discriminatory, and when you deal with the discriminatory conduct and compare it to the subjective criteria that was asserted as the grounds for the firing. I think it becomes clear that the evidence on pretext was sufficient to go to a jury. Thank you very much, Your Honor. Thank you both. We will take the case under advisement. That concludes argument on the cases on the appeal calendar for today. We do have one case on submission. That being in regarding Edwards versus Waters, it's 21-12-19. I want to thank the clerk's office and the court security office and marshals for keeping the courtroom safe and the docket in order. Ms. Jasmine, you are ready to call us out. Quiet, stand adjourned. Thank you.